# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| RAUL MONTES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1: 25-cv-00918 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Raul Montes ("Plaintiff"), brought suit against Defendant, City of Chicago ("Defendant"), alleging violations of the Equal Protection Clause, violations of the Illinois Gender Violence Act ("IGVA"), violations of the Illinois Human Rights Act ("IHRA"), violations of Title VII of the 1964 Civil Rights Act ("Title VII"), and Due Process violations stemming from Plaintiff's loss of employment and alleged mistreatment at Defendant's Department of Transportation ("CDOT") based on his ethnicity, sexual orientation, and age. Before the Court is Defendant's Motion to Dismiss ("Motion") Plaintiff's First Amended Complaint (hereinafter, "Complaint") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court grants Defendant's Motion [38].

## BACKGROUND

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Unless otherwise noted, the following factual allegations are taken from Plaintiffs' Complaint, (Dkt. 23), and are assumed true for purposes of this Motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

1

### A. Alleged Discriminatory Work Environment

Plaintiff is a Mexican American, male member of the LGBTQIA+ community. During his non-work time, Plaintiff is an activist and is seen frequently on the news, on the radio, in the newspaper, and on the internet advocating for victims of crime. In May 2022, Plaintiff was hired by CDOT as a sign hanger. .

From the outset of his employment, three African American employees, Eric Stevens, Lindell Rouse, and Ronnie Marzette, began "bullying" Plaintiff. Plaintiff was repeatedly subjected to offensive slurs from these three individuals, including "faggot," "bitch," "gump," "beaner," "spic," "wetback," and "cocksucker." Multiple coworkers and superiors also directed sexually explicit and homophobic comments at Plaintiff, including demands that he perform sex acts such as fellatio.

Plaintiff reported the incidents to his foreman over the course of several months. Each time, the foreman assured Plaintiff that he would address the matter, but nothing was done. Plaintiff also escalated the reports of harassment to Sam Alexander ("Alexander"), a Black male and Deputy Commissioner of Sign Management at CDOT. Not only did Alexander fail to intervene, but after Plaintiff escalated his complaints to him, he began engaging in the anti-Hispanic and anti-LGBTQIA+ harassment as well.

Plaintiff, who suffers from rectal diastasis and a hernia, also alleges that when he requested time off due to medical issues, he was denied, while similarly situated employees, who did not share his demographic characteristics, were granted such requests. Plaintiff continued to work without taking any time off, despite his worsening medical conditions caused by using a jackhammer. After facing harassment from his coworkers and supervisors, and after his supervisors denied him medical leave, Plaintiff made additional internal complaints and sought assistance from his union, without avail.

### B. Plaintiff's Termination

On December 30, 2022, Alexander unexpectedly called Plaintiff to his office. While waiting outside of Alexander's office, Plaintiff overheard Alexander speaking with another manager, Tuvall Frazier ("Frazier"), a Black male, who participated in the decision to lay off Plaintiff and failed to prevent the harassment. Plaintiff heard Alexander say, "Let's get rid of the spic; he's always on the news," referring to Plaintiff's Mexican heritage and his activism.

After calling Plaintiff into the office, Alexander told Plaintiff that his seasonal employment was over for the year despite that not being his original end date. Shortly thereafter, Plaintiff learned that two female employees, one with less seniority than Plaintiff, had not been laid off; but instead, were converted to full-time positions.

### C. Denial of Rehire

While Defendant terminated Plaintiff's seasonal position early, Plaintiff believed that he would still be prioritized for rehire based on provisions in the union's contract providing preference to returning seasonal employees. Plaintiff was scheduled to return for the 2023 summer season. On May 2, 2023, HR representative Deidre Green emailed Plaintiff an official job offer, contingent only on his completion of final onboarding documents. Plaintiff completed all required paperwork and submitted to a drug test. Between May and June 2023, Plaintiff had multiple conversations with HR officials, who repeatedly assured him that he had been hired and would soon receive his congratulatory letter.

Despite these repeated assurances, on June 26, 2023, Plaintiff received an unexpected email from HR stating that his job offer had been rescinded. On June 28, 2023, HR told Plaintiff that CDOT "no longer wanted to hire [him]" and would no longer respond to his calls or emails. Plaintiff was not provided with any opportunity to appeal or explain his situation after HR stopped responding to him. Other similarly situated employees, who did not report discrimination, were rehired, consistent with the City's custom and practice.

### D. Present Action

Plaintiff filed a complaint with the Illinois Human Rights Commission ("IHRC") soon after his termination and the City's decision to revoke his employment. On October 24, 2024, the IHRC dismissed his complaint for "lack [of] substantial evidence" and issued Plaintiff a Letter of Determination and a Right to Sue Letter. Plaintiff timely filed the present suit with this Court and cross filed his claims with the Equal Employment Opportunity Commission ("EEOC"). Upon Plaintiff's information and belief, the EEOC ended their investigation.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7ᵗʰ Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7ᵗʰ Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**DISCUSSION**

Defendant asserts all of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6). The Court addresses each of its arguments, in turn.

### I. Title VII Claims

Defendant first asserts all of Plaintiff's Title VII claims fail because he failed to exhaust his administrative remedies. (See Dkt. 40 at *4). Before bringing a Title VII claim, a plaintiff must first exhaust his administrative remedies by filing charges with the EEOC and receive a right-to-sue letter. 42 U.S.C. § 2000e–5(e)(1); *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019).

4

Plaintiff asserts his Title VII claims are not barred for failure to exhaust administrative remedies because he "cross-filed his charge of discrimination with the EEOC, and upon information and belief, has been informed that the EEOC investigation has been closed." (Dkt. 55 at *3 n. 1). Plaintiff does not contest that he failed to provide the Court with a right-to-sue letter, but instead asserts, to the extent Defendant raises failure to exhaust as an affirmative defense, such a defense is premature and more appropriately resolved at the summary judgment stage, given the current posture of the administrative proceedings. *Id.*

Based on the uncontested record before the Court, Plaintiff's claims are not ripe for adjudication. Plaintiff merely states "upon information and belief" that his EEOC investigation has been "closed." He does not provide any evidence or documentation from the EEOC, yet alone the requisite right-to-sue notice necessary to maintain his Title VII claims. In fact, the uncontested record before this Court, including March 6, 2025, correspondence from the EEOC, strongly evidences that Plaintiff's investigation is still ongoing. (*See* Dkt 42-2 at *1.) Plaintiff is demonstrably false that ruling on whether he exhausted his administrative remedies is "premature" at this stage because such exhaustion is a prerequisite to bringing his Title VII claims before this Court. *See* 42 U.S.C. § 2000e–5(e)(1). Accordingly, Plaintiffs' Title VII claims are dismissed, without prejudice, pending his proof of administrative exhaustion.

## II.    Equal Protection Discrimination Claims

Defendant next asserts Plaintiff fails to properly allege municipal liability as to support his Equal Protection discrimination claims. (Dkt. 40 at *6.) "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To establish liability against a municipality, a plaintiff must allege that his injury was caused by an official policy, custom, or practice. 42 U.S.C.A. § 1983. A policy, custom, or practice may be demonstrated by: (1) an express policy that, when enforced, causes a

5

constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir.1995) (internal quotations and citation omitted). Since Plaintiff does not allege the CDOT has an official policy of discrimination, the Court's analysis is limited to whether Plaintiff has plausibly stated a claim under the second or third theories.

Defendant argues Plaintiff's Equal Protection claims fail because he does not sufficiently allege that he suffered a constitutional violation that was caused by any City policy, practice, or by a person with policymaking authority to plausibly allege *Monell* liability. (Dkt. 38 at *2.) First, Defendant argues, Plaintiff has no allegations as to any specific policy or practice and instead relies on a legal conclusions of general discrimination against Hispanics, individuals with disabilities, LGBTQIA+ individuals, and older individuals. (Dkt 40 at *7). Plaintiff's blanket conclusory statements like, "[d]iscrimination against Hispanic employees was pervasive and systemic," according to Defendant, do not suffice to establish the City's custom or practice. (*Id.*). Under the alternative theory, Defendant maintains that Plaintiff fails to provide any facts that his alleged discrimination was carried out by anyone with final policymaking authority on behalf of the City. His reliance on discriminatory conduct by supervisors and coworkers, Defendant argues, does not suffice to maintain his claim. (Dkt. 40 at *8-9.) In response, Plaintiff reiterates the same conclusion that denial of equal work opportunities based on race was a widespread practice of the City in Plaintiff's department. (Dkt. 55 at *3.) Plaintiff also maintains that, at this stage, he has sufficiently alleged and provided facts that it was the policy of the city to allow Alexander to act as the "final decision-maker" to determine who was allowed to come back to the department. *Id.*

Plaintiff has not sufficiently alleged that his claims can survive under the second theory because he does not provide sufficient evidence that the discrimination he complains of constitutes a governmental custom. To succeed on the second theory, "the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). At the pleading stage, "a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread as to constitute a governmental custom." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). As it stands, Plaintiff merely provides legal conclusions that his supervisor discriminated, across races, genders, disability statuses, and age. Plaintiff's sole evidence that the "discriminatory behavior" was widespread at the CDOT comes from his assertion that Alexander's administrative assistant, a white woman of Irish descent, submitted a 13-page statement in an unrelated discrimination case in which she documented discriminatory conduct by Alexander. (*See* Dkt. 23 at *8.) Plaintiff's reliance on an unrelated discrimination case, filed by a woman who shares no protected identities with Plaintiff, is not sufficient to establish the City's custom of discrimination against his protected identities.

Plaintiff's claims also cannot survive based on the third theory because he did not sufficiently show that his supervisor had final decision-making authority. "State law informs who legally constitutes a final policymaker." *Walker v. Bd. of Educ. of City of Chi.*, No. 19 CV 4115, 2021 WL 1143517, at *4 (N.D. Ill. Mar. 25, 2021) (Blakey, J.) (citing *Burger v. Cnty. of Macon*, 942 F.3d 372, 375 (7th Cir. 2019)). "Final policymaking authority may be granted directly by statute or delegated or ratified by an official having policymaking authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty.*, 183 F.3d 734, 737 (7th Cir. 1999). There must be a delegation of authority to set policy for hiring and firing, not only a delegation of the final authority to hire and fire." *Id.* at 739; *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 676 (7th Cir. 2009) ("It is a well-established principle that the mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking

7

authority.") (internal quotation marks and citations omitted).  Defendant's discretion to hire and fire within the sign division of CDOT does not, as a matter of law, make him a final decision-maker to sustain a *Monell* claim against the City.  Absent proof that Alexander was granted authority to establish hiring and firing policies by statute or delegated that authority by someone with such power, Plaintiff's discrimination claims cannot survive.  *See Connelly v. Cook Cnty. Assessor's Office*, 583 F. Supp. 3d 1142, 1148 (Coleman, J.)(N.D. Ill. 2022) (rejecting a *Monell* claim that the Cook County Assessor possessed or was delegated final policymaking authority for termination decisions, as opposed to delegated authority to make hiring and firing decisions in individual cases).  Plaintiff's Equal Protection discrimination claims are thus dismissed, without prejudice, until Plaintiff can provide sufficient factual allegations to proceed under a "final decision-maker" theory.

While the Court will not allow Plaintiff's claims to survive as pled, the Court acknowledges Plaintiff's workplace treatment was heinous and far beyond the bounds of propriety.  The Court would be remiss to not voice its concern with Defendant's choice to diminish its employee's claims that he was repeatedly victim to homophobic and ethnicity-based attacks, by likening slurs to "sporadic examples of improper behavior," like a police officer speeding  (*See* Dkt. 40 at *7) (citing *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021) (concluding that a complaint offering three examples of one officer speeding did not plausibly suggest that a city had a widespread practice of allowing officers to speed).  Furthermore, the Court is concerned by Plaintiff's allegations that when he reported such conduct to his superiors, they not only ignored the abuse, but began acting as principal perpetrators of the harmful conduct.  If Plaintiff is able to amend his pleadings to provide evidence of a custom or policy by Defendant to discriminate against individuals with the protected characteristics he actually holds or to show that Alexander had final decision-making authority,  such allegations would hold weight in a later ruling.

III.    **Equal Protection Retaliation Claims**

8

Defendant next argues that Plaintiff's Equal Protection retaliation claim should be dismissed because it is not cognizable under the Fourteenth Amendment. (Dkt. 40 at *9). The right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause. *Grossbaum v. Indianapolis–Marion County Bldg. Auth.*, 100 F.3d 1287, 1296 n. 8 (7th Cir.1996) ("We do not imply, however, that retaliation claims arise under the Equal Protection Clause. That clause does not establish a general right to be free from retaliation.") *Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004). Because Defendant's Equal Protection retaliation claim cannot be vindicated through the Fourteenth Amendment, the Court dismisses his claim.

## IV. Due Process Retaliation Claims

Finally, the Court analyzes whether Plaintiff's Due Process retaliation claim can survive. To bring a Fourteenth Amendment procedural Due Process claim, a plaintiff must have a constitutionally protected property interest of which he has been deprived without due process of law. U.S.C.A. Const.Amend. 14 (prohibiting states from "depriv[ing] any person of life, liberty, or property, without due process of law"). Property interests are not created by the Constitution but rather are created and defined by existing rules or understandings that stem from an independent source such as state law, rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509–10 (7th Cir. 2013). In the employment context, such a property interest "can arise from a statute, regulation, municipal ordinance, or an express or implied contract." *Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 607–08 (7th Cir. 2014).

While the Court notes both parties' arguments addressing the merits of Plaintiff's Due Process Retaliation claim, are threadbare, the Court still determines that Plaintiff has not sufficiently alleged his claim. Plaintiff's Complaint and Response to Defendant's Motion are void of any allegations that Plaintiff had a property interest in his position with Defendant. Absent any argument that a statute,

regulation, municipal ordinance, or an express or implied contract, provides such an interest, Plaintiff's claim cannot survive. *See Price*, 755 F.3d at 607–08.

Accordingly, the Court dismisses Plaintiff's Due Process retaliation claim, without prejudice, absent any proof that Defendant had a property interest in his position. Since all of Plaintiff's federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir.1999)("It is the well-established law of this Circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed.")[1]

## CONCLUSION

For the foregoing reasons, Defendant's Motion is granted, without prejudice, as to his Title VII and Equal Protection discrimination claims and Due Process retaliation claim. Defendant's Motion is granted with prejudice as to Plaintiff's Equal Protection retaliation claim. The Court also declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and thus dismisses them without prejudice. Plaintiff is granted leave to amend his Complaint as to his Title VII claim—with proof of administrative exhaustion—Equal Protection discrimination claim, and supplemental state claims within 30 days if he has a good faith basis for believing he can cure the pleading deficiencies identified in this Opinion. If Plaintiff does not file his amended complaint within 30 days from the date of this Order, Plaintiff's case will be dismissed with prejudice.

**IT IS SO ORDERED.**

Date: 3/2/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

---

[1] The Court makes no determination as to the merits of Plaintiff's remaining IHRA and IGVA claims, it merely declines to retain jurisdiction at this time absent any remaining federal claims.